**TRENK, DiPASQUALE,**
**DELLA FERA & SODONO, P.C.**
347 Mount Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
(973) 243-8600
Anthony Sodono, III
Sari B. Placona
*Counsel to Endo Surgical Center of North Jersey, P.C.,*
*Chapter 11 Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>ENDO SURGICAL CENTER OF NORTH JERSEY, P.C.,<br><br>　　　　Debtor. | Chapter 11<br><br>Case No. 18-10753 |

**FIRST DAY DECLARATION OF WILLIAM J. FOCAZIO IN**
**SUPPORT OF CHAPTER 11 FILING AND FIRST DAY MATTERS**

　　WILLIAM J. FOCAZIO, of full age, pursuant to 18 U.S.C. § 1746, hereby certifies and declares as follows:

　　1.　　I am the President of Endo Surgical Center of North Jersey, P.C.., the debtor and debtor-in-possession (the "Debtor" or "Endo Surgical") in the above-captioned chapter 11 bankruptcy case. I also hold a 90% interest in Endo Surgical. Louis Giasullo, DC, owns four (4) class B, non-voting authorized shares of 100 total Class A and Class B shares representing four percent (4%) ownership of Endo Surgical. Gerald Recioppi owns four (4) class B, non-voting authorized shares of 100 total Class A and Class B shares representing four percent (4%) ownership of Endo Surgical. Anthony Mancini owns two Class B, non-voting authorized shares of Endo Surgical.

1

2. I am fully familiar with the business and affairs of the Debtor, including the facts and circumstances set forth herein.

3. I submit this declaration (the "Declaration") in support of the Debtor's voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the relief that the Debtor has requested from the Court in various motions and applications filed contemporaneously herewith (the "First-Day Pleadings"). The relief sought in each of the First-Day Pleadings (1) is necessary to enable the Debtor to operate in chapter 11 with minimal disruption to its operations without loss of value and (2) best serves the interests of the Debtor's estates and creditors.

4. Except as otherwise indicated, the facts set forth in this Declaration are based on my personal knowledge, information supplied to me by other members of the Debtor's management or its professionals, information learned from my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtor's operations and financial condition. This Declaration is intended to provide a brief background of the Debtor, a description of the Debtor and its services, the reasons for the Debtor's chapter 11 filing, the Debtor's objectives in the chapter 11 process, and a summary of the relief sought in each of the First-Day Pleadings. If called as a witness in the Debtor's bankruptcy proceedings, I could and would testify competently to the facts set forth in this Declaration. Unless otherwise indicated, all financial information set forth in this Declaration is presented on an unaudited basis.

## OVERVIEW OF THE DEBTOR

1. The Debtor is a professional corporation organized in the State of New Jersey. The Debtor is in the general and family practice physician / surgeon business located at 999 Clifton Avenue, Clifton, New Jersey 07013 (the "Property").

2. The Property is owned by DVCO, LLC ("DVCO"). DVCO is owned by William J. Focazio, M.D. ("Dr. Focazio").

3. On October 21, 2016, McNerney and Associates, Inc. prepared an appraisal report for First Commerce Bank ("FCB") for the Property. The market value of the Property was $4,925,000.

4. On or about December 3, 2014, First Commerce Bank ("FCB") made a loan of $4,000,000 (the "$4 Million Loan") to Arthur St. Realty, LLC ("Arthur Street"),[1] amongst others, encumbering premises known as 41 Arthur Street, East Brunswick, New Jersey (the "East Brunswick Premises").

5. As of October 24, 2016, Sockler Realty Services Group, Inc. prepared an appraisal report for FCB of the East Brunswick Premises. The market value of the East Brunswick Premises was $4,700,000.

6. On or about January 23, 2015, FCB made a loan of $3,375,000 (the "$3.375 Million Loan") to DVCO encumbering the East Brunswick Premises on a second mortgage priority basis, and a first mortgage priority basis on the Property.

7. On or about October 30, 2015, FCB made a loan of $1,200,000 (the "$1.2 Million Loan") to Riverwood Surgical Center, LLC ("Riverwood Surgical") and Endo Surgical Center of North Jersey, P.C. ("Endo Surgical") encumbering the East Brunswick Premises on a third mortgage priority basis and a second mortgage priority basis on the Property.

8. On or about December 30, 2015, FCB made a loan of $2,250,000 (the "$2.25 Loan") to DVCO, Metropolitan Anesthesia LLC ("Metropolitan"), Endo Surgical, and Focazio MD encumbering the East Brunswick Premises on a fourth mortgage priority basis, the Property

---

[1] Arthur Street, Riverwood Surgical, Endo Surgical, Metropolitan, and the Medical Building are all owned by Dr. William J. Focazio.

3

on a third mortgage priority basis, and a third mortgage priority basis on premises known as 101 Fox Hedge Road, Saddle River, New Jersey (the "Saddle River Premises").[2]

9. On January 11, 2018, I received a comparative market analysis of the Saddle River Premises from Christie's International Real Estate Special Properties. The current market value of the Saddle River Property is between $20,000,000 to $22,000,000. See Exhibit A.

10. On or about December 30, 2015, FCB made a loan of $1,000,000 (the "$1 Million Loan") to The Medical Building, LLC (the "Medical Building") and is secured by a first mortgage priority basis on premises at 975 Clifton Avenue, Clifton New Jersey (the "975 Clifton Premises").

11. As of December 3, 2015, Fleming White Appraisals, Inc. prepared an appraisal report for FCB of the 975 Clifton Premises. The market value of the 975 Clifton Premises was $1,250,000. The Medical Building is the owner of the 975 Clifton Premises.

12. The mortgages, as set forth above, along with the Note (defined herein), are cross-collateralized as to all grantors and/or borrowers and/or properties.

13. The $1 Million Loan, together with the $4 Million Loan, $3.375 Million Loan, $1.2 Million Loan, and $2.25 Million Loan shall be referred herein collectively as, the "Loans."

14. As of January 9, 2018, the outstanding indebtedness owed to FCB as it relates to the Loans equals approximately $12,241,000, including interest, late charges, legal fees, prepayment premiums and related fees (the "FCB Outstanding Indebtedness").

15. DVCO is a limited liability company duly organized under the laws of the State of New Jersey. DVCO maintains an office at the Property.

16. Metropolitan is a limited liability company duly organized under the laws of the State of New Jersey. Metropolitan maintains an office at the Property.

---

[2] This is Dr. Focazio's residence. Attached as Exhibit A is an appraisal of the Saddle River Premises from Christies.

17. Endo Surgical is a professional corporation duly organized under the laws of the State of New Jersey. Endo Surgical maintains an office at the Property.

18. Focazio MD is a corporation for profit duly organized under the laws of the State of New Jersey. Focazio MD maintains an office at the Property.

19. The Debtor leases the Property from DVCO for $360,000 per year to be paid in equal installments of $30,000 per month (the "Lease").

20. The Lease, commenced on January 23, 2015, has a term of twenty (20) years. The Lease requires the Debtor to pay all utilities. The Debtor, together with William J. Focazio M.D., P.A. ("Focazio MD"), is also responsible for 75% of the taxes, insurance, and maintenance of the Property.

21. The Debtor's gas and electric are paid for by Focazio M.D. Passaic Valley Water Commission ("PVWC") provides water for the Debtor. The Debtor also pays the water bill of Focazio MD. PVWC's bill is in DVCO's name.

22. The Debtor currently employs approximately twelve (12) employees: one (1) full-time, one (1) part time, and ten (10) independent contractors who are 1099 employees. The employees are paid bi-weekly on Monday. For example, the employees were paid on December 18, 2017 for the pay period November 25, 2017 through December 8, 2017.

23. Alena Czerkis's pay is $2,659.20 (gross) for a two-week period. As of the date of the Chapter 11 filing, Ms. Czerkis is owed $2,777.72. Ms. Czerkis is the only employee who receives vacation time and sick time.

24. The Debtor owes approximately $600,000 in payroll taxes to the State of New Jersey, Division of Taxation.

25. The employees do not receive benefits.

26. The Debtor has worker's compensation insurance issued by Liberty Mutual.

27. The Debtor is open for business five (5) days a week, Monday through Friday from 9:00 a.m. to 5:00 p.m.

28. The Debtor maintains four (4) bank accounts. The Chase Bank account is used for credit card receipts and ACH wires. The Bank of America accounts is used primarily for payroll. The Valley National Bank account is used to receive ACH payments from insurance companies. The Clifton Savings Bank accounts is used to pay ordinary course expenses.

29. The Debtor's patients tender payment via credit cards.

30. The Debtor currently has revenues of approximately $6,010 for the fifteen (15) day period of January 14, 2018 through January 29, 2018.

31. I am the majority voting member of East Brunswick Imaging. On March 31, 2016, East Brunswick Imaging Associates, LLC ("East Brunswick Imaging") filed a voluntary Chapter 7 petition. East Brunswick Imaging's principal place of business is located at 647 Route 18 South, Suite W, East Brunswick, New Jersey 08816.

**CIRCUMSTANCES LEADING TO BANKRUPTCY**

32. On or about January 23, 2015, DVCO entered into a certain commercial lease with the Debtor for a portion of the Property.

33. On December 5, 2016, the Honorable Thomas J. Laconte, P.J., Ch. (the "Receiver"), entered an order appointing Lawrence J. Thomson as receiver of the Property (the "Order").

34. The Order empowers the Receiver with care and possession of the Property. Pursuant to the Order, the Debtor was directed to pay to the Receiver all rents.

35. The Receiver was authorized to prosecute all legal proceedings necessary to protect the Property. The Receiver's counsel is Windels Marx Lane & Mittendorf, LLP.

36. The Receiver states that no payments have been made by the Debtor during the term of the receivership.

37. On November 17, 2017, the Receiver demanded payment for all outstanding rent. As of November 30, 2017, the Debtor owed rent in the amount of $400,514.71.

38. On November 29, 2017, the Receiver filed a Verified Complaint against the Debtor and DVCO in the Superior Court of New Jersey, Law Division, Special Civil Part, Landlord Tenant Division, Passaic County, bearing docket number PAS-LT-9864-17 (the "Passaic County Matter").

39. An eviction proceeding in the Passaic County Matter is scheduled for January 16, 2018.

A. **The Debtor's Intended Plan**

40. As part as the reorganization, the Debtor intends to seek to reorganize its debts.

41. The debtor's operations are currently profitable and will continue to improve over the next few years.

42. The Debtor has other opportunities for growth. I have been contacted by other medical professionals who have a desire to possibly purchase the surgical center.

43. The Chapter 11 proceedings will allow the Debtor to reorganize its operations, maintain its loyal patients, and grow its business.

## THE DEBTORS' CHAPTER 11 FILING

44. The Debtor filed a voluntary Chapter 11 petition on January 13, 2018 (the "Petition Date"). The Debtor intends to continue operating its business. The Debtor proposes to use its cash and future revenues in accordance with the debtor-in-possession operating budget, which is annexed to the cash collateral motion as Exhibit A and hereto as Exhibit B.

## FIRST-DAY MOTIONS

45. Concurrently with the filing of its chapter 11 petition, the Debtor has filed certain motions and proposed Orders (collectively, the "First-Day Orders"). The Debtor requests this Court enter each of the First-Day Orders described below, as each is critical to the Debtor achieving a successful result in its chapter 11 case for the benefit of all parties in interest.

**A. Motion for an Order Authorizing the Interim and Final Use of Cash Collateral**

46.     The Debtor seeks entry of an order authorizing the interim and final use of Cash Collateral and submits further that the Debtor's secured creditors will not be harmed by the use of the Cash Collateral because the creditors are adequately protected by the excess equity in the value of the Debtor's business and other collateral provided.  The Cash Collateral would be used solely in accordance with the budget annexed to the Motion.  The use of Cash Collateral is necessary to ensure that the Debtor continues to monitor patients so as to not lose its valuable customers during the reorganization.

**B. Debtor's Motion for an Interim Order and a Final Order (i) Prohibiting Utility Companies From Discontinuing, Altering, or Refusing Service; (ii) Deeming Utility Companies to Have Adequate Assurance of Payment; and (iii) Establishing Procedures for Resolving Requests for Additional Assurance Pursuant to 11 U.S.C. §§ 105(a) and 366**

47.     The Debtor seeks an (i) an Interim Order, and (ii) a Final Order, pursuant to sections 105(a) and 366 of the Bankruptcy Code, (a) prohibiting the utility companies from discontinuing, altering or refusing service to the Debtors, except as set forth herein, (b) deeming the utility companies adequately assured of future performance on the basis of payment of a two-week security deposit, and (c) establishing procedures for resolving requests for additional assurance of payment.

48.     Uninterrupted utility services are essential to the Debtor's ongoing operations and, therefore, to the success of the Debtor's chapter 11 efforts.  Indeed, any disruption to the Debtor's businesses the cessation of utility services by the utility companies will bring the Debtor's operations to a halt.

49.     In accordance with Bankruptcy Code section 366(c)(1)(A), the Debtor proposes to provide additional assurance of payment to each utility company.  Specifically, the Debtor

proposes to issue a security deposit equal to approximately fifty percent of its average average monthly utility consumption to each utility company.

### C. The Debtor's Motion for Authority to Continue to Use Existing Bank Accounts and Business Forms Pursuant to 11 U.S.C. §§ 105(a) and 363(c)

50. Currently, the Debtor has three (3) bank accounts (collectively, the "Bank Accounts"). In the ordinary course of its operations, the Debtor receives deposits and issues checks, wire transfers and ACH transfers into and out of its Bank Accounts.

51. The Debtor will work closely with the banks to ensure that appropriate procedures are in place so that checks issued prior to the Petition Date, but presented after the Petition Date, will not be honored absent approval from the Court. No prepetition checks, drafts, wire transfers, or other forms of tender that have not yet cleared the relevant drawee bank as of the Petition Date will be honored unless authorized by separate Order of this Court.

52. The Debtor also seeks authority to continue to use its prepetition business forms including, but not limited to, letterhead, invoices, checks, *et cetera* (collectively, the "Business Forms"), without reference to its status as debtors-in-possession. Requiring the Debtor to immediately print new Business Forms would be burdensome, expensive, and disruptive. The Debtor will, however, either print or stamp "Debtor-in-Possession" on its checks, and when it replaces stock, will obtain checks marked "Debtor-in-Possession."

### D. Motion for an Order Directing Credit Card Processors to Honor their Contracts with the Debtor Pending Assumption or Rejection Under 11 U.S.C. §§ 365 and 105(a)

53. In the ordinary course of business, the Debtor accepts credit and debit cards as payment for goods at the Debtor's store. The Debtor accepts such cards as payment from its patients. To complete these transactions, the Debtor maintains contracts under which the payments are processed with certain companies.

54. These agreements are executory contracts and the Debtor requests an order requiring such agreements to remain in full force and effect until such time as the agreements are assumed or rejected. These agreements are integral to the Debtor's ability to operate its business without interruption and maximize the value of the Debtor's estate.

I certify the foregoing statements made by me are true. I am aware if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: January 14, 2018                                  */s/ William J. Focazio, M.D.*

                                                                           WILLIAM J. FOCAZIO, M.D.

4842-8810-7354, v. 1